## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DEBRA L. BROWN, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 11-2461-JWL** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

(hereinafter Commissioner) denying Social Security disability benefits (SSD) and

Supplemental Security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A)

of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)

(hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered

pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision.

## I.      Background

Plaintiff applied for both SSD and SSI on August 14, 2008, alleging disability

beginning October 15, 2007.  (R. 10, 114-23).  The applications were denied initially and

upon reconsideration, and Plaintiff requested a hearing before an Administrative Law

Judge (ALJ).  (R. 10, 54-57, 77-78).  Plaintiff's request was granted, and Plaintiff

appeared with counsel for a hearing before ALJ Guy E. Taylor on April 28, 2010.  (R. 10, 18-53).  At the hearing, testimony was taken from Plaintiff and from a vocational expert.  Id.  ALJ Taylor issued his decision on June 16, 2010, finding that Plaintiff is not disabled within the meaning of the Act, and denying Plaintiff's applications.  (R. 10-17).

The ALJ found that Plaintiff has severe impairments consisting of ocular myasthenia gravis, obesity, adjustment disorder, and hypertension, but that her impairments either individually or in combination do not meet or medically equal the severity of a Listed Impairment.  (R. 12-13).  He assessed Plaintiff with the residual functional capacity (RFC) for a range of light work limited by reduced visual acuity, by an inability to climb ladders or scaffolds and the need to avoid dangerous machinery and unprotected heights; by the ability to balance or to climb stairs only occasionally; and by a limitation to simple, unskilled work or less with an SVP (specific vocational preparation) of 2 or less.  (R. 14).  Based upon the RFC assessed, he determined that Plaintiff is unable to perform her past relevant work as a school bus driver, but that when including considerations of age, education, and work experience, there are jobs in significant numbers in the national economy that Plaintiff can perform, represented by jobs such as a linen grader, an optical goods reducing machine operator, or a collateral operator.  (R. 15-16).  Because Plaintiff is able to perform work available in the national economy, the ALJ determined that she is not disabled within the meaning of the Act, and denied her applications.  (R. 17).  Plaintiff sought Appeals Council review of the ALJ's decision, and submitted a representative brief and additional medical records.  (R. 6, 210-

18, 372-75).  The Council made the brief and the additional records a part of the

administrative record and considered that information, but found no reason under Social

Security Administration (SSA) rules to review the decision, and denied Plaintiff's

request.  (R. 1-5).  Therefore, the ALJ's decision is the final decision of the

Commissioner.  (R. 1);  Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff

now seeks judicial review of that decision. (Doc. 1).

## II.     Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi,

422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048,

1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d

1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

§ 405(g)).  Section 405(g) of the Act provides for review of a final decision of the

Commissioner made after a hearing in which the Plaintiff was a party.  It also provides

that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine

whether the factual findings are supported by substantial evidence in the record and

whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084

(10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).

Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such

evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at

1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither

reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v.

Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health &

Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395

F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the

Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.

Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has

a physical or mental impairment which prevents her from engaging in any substantial

gainful activity, and which is expected to result in death or to last for a continuous period

of at least twelve months.  Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting

identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and

1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not

only unable to perform her past relevant work, but cannot, considering her age, education,

and work experience, engage in any other substantial gainful work existing in the national

economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability.  20

C.F.R. §§ 404.1520, 416.920 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir.

2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a

determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether she

has a severe impairment(s), and whether the severity of her impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used

at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--

determining whether claimant can perform past relevant work; and whether, considering

vocational factors of age, education, and work experience, claimant is able to perform

other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).

In steps one through four the burden is on claimant to prove a disability that prevents

performance of past relevant work.  Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show there are jobs in the economy

within Plaintiff's RFC.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims that the ALJ's RFC assessment is not based upon medical

evidence, but that the ALJ based it upon either the opinion of a single decisionmaker or

on his own unsupported lay opinion and, therefore, his decision must be reversed as a

matter of law.  She also claims that, in any case, the ALJ did not include depression,

blurred vision, vertigo, and below average concentration, persistence, and pace in his

hypothetical question for the vocational expert, and the decision must be reversed because

of this deficiency in the hypothetical questioning.  The Commissioner argues that the ALJ

properly assessed Plaintiff's RFC and properly relied upon the vocational expert

testimony to find that Plaintiff is not disabled.  The court finds no error in the RFC

assessment or in the hypothetical questioning.

### III.    RFC Assessment

Relying on the law of the Eighth Circuit, Plaintiff argues that the assessment of

RFC is a medical question and that the ALJ is required to consider at least some evidence

from a medical professional which supports the RFC assessed.  (Pl. Br. 17) (citing Lauer

v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir.

2000); and Bently v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995)).  She argues that "[t]here

is no medical assessment of record which supports the ALJ's RFC finding," and "[t]he

only document[] of record which supports the ALJ's RFC assessment is Exhibit 5E," the

physical RFC assessment completed by the single decisionmaker (SDM) at the initial

disability determination.  (Pl. Br. 17), see also (R. 178-85).  Plaintiff argues that an SDM

is not an acceptable medical source or a medical professional of any stripe, and her

opinions cannot be used as medical evidence to support the ALJ's RFC assessment.  Id. at

18-20.  She asserts, without citation to any portion of the decision at issue, that the ALJ

relied upon information from this non-medical source as the basis for his RFC

assessment, and consequently the decision must be reversed as a matter of law.  Id. at 19.

Plaintiff argues that there is no record medical evidence regarding her functional

limitations, and that the only explanation for the ALJ's RFC assessment must be that he

made his own independent medical findings and thereby substituted his opinions for those

of the physicians.  Id. at 20-21.  She argues that as a matter of law, the ALJ's RFC

assessment must fail for lack of support by substantial record evidence.  Id. at 21.

The Commissioner argues that the SDM's RFC assessment was reviewed and

affirmed by a physician, and therefore, might properly be relied upon as medical evidence

by the ALJ.  (Comm'r Br. 13).  He continues by arguing that the ALJ did not rely

exclusively on the opinion of the SDM in support of his RFC assessment, but specifically

cited additional medical evidence including Plaintiff's diagnosis with ocular myasthenia

gravis, her blurred vision, visual deficits, and reduced visual acuity; Dr. Cornett's

physical examination and report; and a consultative mental examination and report

revealing a weak short-term memory, below average ability to attend and concentrate, and

capability to understand and follow simple directions.  (Comm'r Br. 13-14).  He argues

that the ALJ also properly relied upon non-medical record evidence and assessed RFC

based upon all of the evidence.  Id. at 14.

### A.    Standard for Assessing RFC

RFC is an assessment of the most a claimant can do on a regular and continuing

basis despite her limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); see also, White, 287

F.3d at 906 n.2.  The RFC assessment will be made "based on all the relevant evidence in

your case record."  Id.  The Commissioner has provided eleven examples of the types of

evidence to be considered in making an RFC assessment, including:  medical history,

medical signs and laboratory findings, effects of treatment, reports of daily activities, lay

evidence, recorded observations, medical source statements, effects of symptoms,

attempts to work, need for a structured living environment, and work evaluations.  Soc.

Sec. Ruling (SSR) 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2011).

###    B.    The ALJ's RFC Assessment

The ALJ stated in finding number 5 that he had assessed Plaintiff's RFC "[a]fter

careful consideration of the entire record."  (R. 14).  The ALJ's summary and discussion

of the record evidence is included in his step two and step three analyses, and his RFC

analysis and discussion pursuant to finding number 5.  (R. 12-15).  In those analyses, the

ALJ considered Plaintiff's allegations and her testimony, along with discussion of the

medical evidence, including Dr. Cornett's physical examination and report, Dr. Jordan's

mental evaluation and report, and consideration of Plaintiff's treatment which occurred

after those evaluations were completed--recognizing that she lost her insurance, and

discussing the treatment and prognosis thereafter.  (R. 12-15).  He noted Plaintiff's

concession that prescribed medications have been helpful, and that she has not been

compliant with treatment.  Id. at 14.  He noted Plaintiff's daily activities include Bible

reading and maintaining a driver's license without restriction, which suggest that her

visual problems are not as severe as she alleges.  He found Plaintiff's allegations of

symptoms not credible, and found that the third party function report completed by her

brother "only indicates the claimant is limited in the type of work she can perform and not

precluded from all work." Id. at 15.

### C.      Analysis

As a preliminary matter, the court notes that nowhere in the decision did the ALJ

state that his RFC assessment was based upon the RFC assessment produced by the SDM,

dated 11/14/2008, and contained in exhibit 5E.  Moreover, as noted above, Plaintiff

provides no citation to the source of her assumption that the ALJ relied upon the SDM's

assessment, other than her bald statement that the SDM's assessment is the only

"document[] of record which supports the ALJ's RFC assessment." (Pl. Br. 17).  The

apparent source of Plaintiff's assumption is that both the ALJ and the SDM assessed

Plaintiff with the physical exertional limitations for a range of light work.  Compare (R.

14), with (R. 179).  However, the specific limitations assessed by the ALJ contain

significant differences from those assessed by the SDM.  As for postural limitations, the

ALJ found that Plaintiff can only occasionally balance whereas the SDM found she could

frequently balance.  (R. 14, 180).  Perhaps of greatest significance, the SDM found no

visual limitations whereas the ALJ found that Plaintiff is "limited to work that requires

reduced visual acuity." (R. 14, 181).  The SDM found Plaintiff must avoid concentrated

exposure to extreme cold whereas the ALJ found no such environmental limitation.  (R.

14, 182).  Plaintiff has not even demonstrated that the ALJ, in fact, relied upon the SDM's

assessment.

Plaintiff cites a substantial line of case law holding that an SDM is not an

acceptable medical source and as such her RFC assessment is not worthy of any weight <u>as</u>

<u>a medical opinion</u> in the ALJ's analysis.  (Pl. Br. 18-20) (citing, among others, <u>Dewey v.</u>

<u>Astrue</u>, 509 F.3d 447, 449-50 (8th Cir. 2007); <u>Kennedy v. Astrue</u>, Civ. A. No. 09-00449-

B, 2010 WL 1643248, *8 (S. D. Ala. Apr. 21, 2010); <u>Lawrence v. Astrue</u>, No. 08-cv-

00483-REB 2009 WL 3158149, *1 (D. Colo. Sept. 24, 2009); <u>Ky v. Astrue</u>, No. 08-cv-

00362-REB, 2009 WL 68760 at *3 (D. Colo. Jan. 8, 2009); <u>Casey v. Astrue</u>, Civ. A. No.

07-0878-C 2008 WL 2509030, *4 n.3 (S. D. Ala. June 19, 2008); <u>Bolton v. Astrue</u>, No.

3:07-cv-612-J-HTS, 2008 WL 2038513, *4 (M. D. Fla. May 12, 2008)).  Plaintiff even

cites to a court in this district which expressed that it was "troubled" that the

Commissioner used RFC Assessment forms completed by SDM's and signed by placing

their name (without title) in the space on the form designated "Medical Consultant's

Signature."  <u>Id.</u> at 20 (citing <u>Kempel v. Astrue</u>, No. 08-4130-JAR, 2010 WL 58910, *7

(D. Kan. Jan. 4, 2010)).  The significance of the cases cited by Plaintiff is that an ALJ

may not rely upon the opinion of an SDM as a <u>medical opinion</u>.  However, the court finds

that none of the cases cited by Plaintiff held that the opinion of an SDM may not be relied

upon as <u>record evidence</u> suggesting certain limitations in a claimant's physical

capabilities.  Moreover, the point of the <u>Kempel</u> court's concern was that the forms used

by the SDM's were the same forms as those used by medical consultants, and by placing

the signature in a block titled "Medical Consultant's Signature" the forms implied that the

SDM was a medical consultant.  In fact, the <u>Kempel</u> court cited a case where the court

had apparently erroneously relied upon the opinion of an SDM as "<u>medical evidence</u> that

plaintiff can work full-time." <u>Id.</u> 2010 WL 58910 at *7 (citing <u>Sawyer v. Astrue</u>, No. 08-

2114-KHV, 2009 WL 634666 at *7 (D. Kan. Mar. 11, 2009) (emphasis in <u>Kempel</u>)).  The

<u>Kempel</u> court's concern is not an issue in this case.  Here, the RFC Assessment form

signed by the SDM does not have a block entitled "Medical Consultant's Signature," and

clearly indicates that the form was signed by a Single Decisionmaker.  (R. 185).  Further,

the form was filed in Section E of the administrative record ("Disability Related

Development"), rather than in Section F of the record ("Medical Records") where a

doctor's medical opinions are routinely filed.  There is very little danger that one might

misinterpret the assessment here as that of a medical professional, and Plaintiff provides

no evidence that the ALJ did so.  Further, as the Commissioner argues, Dr. Siemsen

"reviewed all the evidence in the file," and affirmed the "RFC and and/or [sic] assessment

of 11-14-08."  (R. 334).  Therefore, the RFC assessment form completed by the SDM

became the medical opinion of Dr. Siemsen, and as Dr. Siemsen's opinion, it constitutes

medical evidence upon which the ALJ might properly rely even under the law as viewed

by Plaintiff.

Finally, Plaintiff misunderstands the law with regard to assessing RFC.  First, her

argument implies that each limitation assessed in the ALJ's RFC must come from some

medical opinion or medical RFC assessment which appears in the record.  That is not the

law in the Tenth Circuit.  The determination of RFC is an administrative assessment,

based on all the evidence in the record regarding how plaintiff's impairments and related

symptoms affect her ability to perform work related activities.  SSR 96-5p, West's Soc.

Sec. Reporting Serv., 126 (Supp. 2012) ("The term 'residual functional capacity

assessment' describes an adjudicator's findings about the ability of an individual to

perform work-related activities."); SSR 96-8p, West's Soc. Sec. Reporting Serv., 144

(Supp. 2012) ("RFC is an administrative assessment of the extent to which an individual's

medically determinable impairment(s) . . . may cause physical or mental limitations or

restrictions that may affect his or her capacity to do work-related physical and mental

activities.").  Because this assessment is made based on "all of the evidence in the record,

not only the medical evidence, [it is] well within the province of the ALJ."  Dixon v.

Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R.

§§ 404.1545(a), 416.945(a).

In addition, the final responsibility for determining RFC rests with the

Commissioner.  20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.  More

than a year ago this court clarified that the narrative discussion required by SSR 96-8p to

be provided in an RFC assessment does not require citation to a medical opinion, or even

to medical evidence in the administrative record for each RFC limitation assessed.

Castillo v. Astrue, No. 10-1052-JWL, 2011 WL 13627, at *10-11 (D. Kan. Jan 4, 2011).

"What is required is that the discussion describe how the evidence supports the RFC

conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC

assessment."  Id.; see also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374,

at *13 (D. Kan. Apr. 4, 2011).  There is no need in this case, or in any other, for the

12

Commissioner to base the limitations in his RFC assessment upon specific statements in

medical opinions or other medical evidence in the record.  SSR 96-8p, to which Plaintiff

appeals in his argument, requires that "[t]he RFC assessment must be based on all of the

relevant evidence in the case record," and it provides a list of eleven examples of such

relevant evidence as noted above, one of the examples is specifically a medical opinion

("Medical source statements"), four examples are other medical evidence, and six of

those examples are evidence other than medical evidence.  SSR 96-8p, West's Soc. Sec.

Reporting Serv., 147 (Supp. 2012).

Eighth Circuit law, as cited by Plaintiff, does not require a different conclusion.

The case of Lauer v. Apfel states the relevant law in that circuit:

> Although the ALJ "bears the primary responsibility for assessing a
> claimant's residual functional capacity based on all relevant evidence,"
> Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000), we have also stated
> that a "claimant's residual functional capacity is a medical question," Singh,
> 222 F.3d at 451.  "[S]ome medical evidence," Dykes v. Apfel, 223 F.3d
> 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the
> claimant's RFC, and the ALJ should obtain medical evidence that addresses
> the claimant's "ability to function in the workplace," Nevland v. Apfel, 204
> F.3d 853, 858 (8th Cir. 2000).

Lauer, 245 F.3d at 703-04.

While the cases cited by Plaintiff state that RFC is a medical question, they do not

require that each RFC limitation must be drawn from a medical opinion or even from

medical evidence alone.  Without doubt the record must contain medical evidence

supporting the ALJ's RFC assessment.  If Plaintiff does not provide medical evidence of

her physical and/or mental condition, it is the Commissioner's duty to develop the record

either by securing records from Plaintiff's healthcare providers or by procuring

consultative examinations. Here, the Commissioner procured both a physical

examination and report and a mental examination and report--from Dr. Cornett and Dr.

Jordan, respectively. (R. 304-12). The <u>Dykes</u> court, to which <u>Lauer</u> cited, explained the

proper modicum of medical evidence which must be in the record:

> To the extent Dykes is arguing that residual functional capacity may be
> proved <u>only</u> by medical evidence, we disagree. The current regulations
> make clear that residual functional capacity is a determination based upon
> all the record evidence. <u>See</u> 20 C.F.R. § 404.1545; Soc. Sec. Ruling 96-8p,
> at pp. 8-9. We agree with Dykes to this extent-the record must include
> some medical evidence that supports the ALJ's residual functional capacity
> finding.

<u>Dykes</u>, 223 F.3d at 866-67 (emphasis in original).

This modicum of medical evidence is clearly contained in the administrative

record here, at least in the consultative examination reports of Dr. Cornett and Dr. Jordan,

and in the medical opinions of Dr. Schulman, Dr. Warrender, and Dr. Siemsen. Plaintiff

has shown no error in the ALJ's RFC assessment.

## IV.    Hypothetical Questioning

In her final claim of error, Plaintiff asserts that the ALJ's hypothetical questioning

of the vocational expert (VE) did not include limitations caused by her myasthenia gravis,

"such as depression, blurred vision, vertigo as well as below average concentration,

persistence, and pace." (Pl. Br. 22). Therefore, she argues that the hypothetical

questioning did not relate with precision all of her impairments, that the VE testimony

based thereon "cannot constitute substantial evidence to support the [Commissioner's]

decision," and that the decision must be reversed.  Id. 22-23. (quoting Hargis v. Sullivan,

945 F.2d 1482, 1492 (10th Cir. 1991)).  She argues that the VE testified that if double

vision and vertigo required Plaintiff to keep her eyes closed for two hours until the

vertigo or double vision cleared up, there would be no work available in the economy,

and that, accordingly the decision below should be reversed and the case remanded for an

award of benefits.  Id.

The Commissioner argues that the ALJ assessed limitations resulting from

myasthenia gravis including the need to avoid hazards such as dangerous machinery and

unprotected heights, an inability to climb ladders or scaffolds, the ability to balance and

climb stairs only occasionally, the need to have jobs that only required reduced visual

acuity, and only simple unskilled work, and that he included these limitations in his

hypothetical questioning of the VE.  (Comm'r Br. 15).  He argues that because these

limitations accurately portrayed Plaintiff's limitations, the VE's answers constitute

substantial evidence upon which the ALJ properly relied.  Id. at 16.

As the Commissioner suggests, the ALJ accounted for the limitations produced by

Plaintiff's myasthenia gravis when he included these limitations in the RFC assessed:

> The claimant, however, cannot climb ladders or scaffolds; and, she should
> avoid hazards, such as dangerous moving machinery and unprotected
> heights.  The claimant can climb stairs and balance occasionally.  She is
> also limited to work that requires reduced visual acuity.  Additionally, the
> claimant is limited to simple unskilled work with an SVP of 2 or less due to
> her loss of concentration, persistence and pace as a result of her situational
> depression and anxiety.

(R. 14).  He included each of the limitations in his hypothetical question to the VE:

however, they could not use ladders or scaffolding, nor could they be in a job involving hazards such as dangerous machinery or unprotected heights. They could only occasionally climb stairs, balance.  They would also need to have a job with reduced limited visual acuity and one that would need to involve simple unskilled work of SVP 2 or less because of the loss of concentration, persistence of pace and short term memory.

(R. 49).

The only additional limitation suggested by Plaintiff is that when she develops vertigo or double vision she will have to "keep her eyes closed for up to two hours either until the vertigo or the double vision cleared up." (Pl. Br. 22) (quoting (R. 52)).  Plaintiff cites no record evidence for this assertion except for counsel's questioning of the VE at the hearing.  However, the court notes that Plaintiff testified that her double vision can last anywhere from two hours to all day, and that when she gets double vision she has to lie down and close her eyes.  (R. 41).  Therefore, the limitations asserted are based on Plaintiff's testimony, but the ALJ found Plaintiff "not fully credible" (R. 15), and Plaintiff does not claim error in that finding.

The hypothetical presented to a vocational expert must include all limitations found by the ALJ, but need not include all limitations alleged by plaintiff.  Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000).  The ALJ need only include limitations which he finds supported by substantial evidence in the record.  Davis v. Apfel, 40 F. Supp. 2d 1261, 1269 (D. Kan. 1999).  This is a necessary corollary to the rule that "'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'"

16

Gay v. Sullivan, 986 F.2d 1336, 1340 (10th Cir. 1993) (citing Hargis, 945 F.2d at 1492). Because the ALJ found that Plaintiff's allegations are not credible, and did not find a need to lie down and close her eyes when she gets vertigo or double vision, he did not need to (and did not) include those limitations in either the RFC or the hypothetical questioning. Plaintiff has shown no error in the hypothetical questioning.

Because Plaintiff has shown no error in either the ALJ's RFC assessment or in his hypothetical questioning of the VE, the court must affirm the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 24th day of August 2012, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

17